# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 19, 2011

## STATE OF TENNESSEE v. HERSCHEL VAN LILLARD, JR.

### Direct Appeal from the Criminal Court for Davidson County
### No. 2003-D-3151     Seth Norman, Judge

### No. M2010-00869-CCA-R3-CD - Filed August 19, 2011

The defendant, Herschel Van Lillard, was convicted by a Davidson County jury of first degree felony murder and was sentenced by the trial court to life imprisonment in the Department of Correction. The sole issue he raises on appeal is whether the evidence was sufficient to sustain his conviction. Following our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

William A. Lane, Nashville, Tennessee, for the appellant, Herschel Van Lillard, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Paul DeWitt and Dan Hamm, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

According to the State's proof at trial, on August 5, 2003, the defendant and three accomplices traveled to a home located on Mill Station Drive in Nashville. Two of the men entered the home, pointed weapons at its residents, and demanded money. During the incident, one of the residents, fifteen-year-old Justin Green, was shot and killed. The defendant was subsequently indicted for first degree felony murder based on his participation in the killing of the victim during the perpetration of or attempt to perpetrate a robbery.

At trial, the victim's mother, Mary Jane Crockett Green, testified that at about 9:00 p.m. on the night of the shooting, her dog's "vicious" growling and barking roused her from bed. When she got up, she saw a man standing just outside the doorway to her room with a gun "pressed into" the victim's chest. Ms. Green then heard gunshots in another part of the house, and "everybody ran." After the shots, she saw another man run across the living room and out of the house. She described the first man, whom she had never seen before, as "really distinctive looking, . . . easily recognizable, . . . [and] really, really tall," with braided hair. The second man, whom she also did not recognize, stood "a lot" shorter than the first and wore a bandanna around his face. After the men left, Ms. Green found the victim lying facedown in his room.

Chris Crockett, the victim's brother, testified that he had become friends with the defendant while the two worked together at a restaurant in downtown Nashville. Around the time of the shooting, he had received a settlement of approximately $10,000 as part of a personal injury claim, and he had stored the funds, in cash, in a box in the living room of the house. Crockett testified that he told everyone that worked at the restaurant with him, including the defendant, about the money he had received. He also testified that he periodically sold marijuana to the defendant from the Mill Station home and that the defendant had visited him there to purchase marijuana earlier on the day that the victim was shot.

Crockett testified that on the night of the shooting, he was playing video games with the victim when he looked up to see a man holding a gun in his face. The man holding the gun asked him where the money was, and he responded by walking the man toward the box where he had stored the cash. As he neared the box, his mother emerged from her bedroom and began screaming, and one of the armed men ran toward the victim's room. Immediately afterwards, Crockett heard gunfire. Crockett testified that in the ensuing commotion, he collided with the second armed man, wrestled the man's gun away from him, and attempted to fire it. The weapon would not fire, however, so he retrieved his own weapon from a bedroom and shot at the two men as they fled. Crockett testified that he did not recognize either gunman.

Detective Joe Williams of the Metropolitan Nashville Police Department, who was assigned to the homicide unit at the time of the shooting, testified that he attended the victim's autopsy and received from the medical examiner the bullet that had been removed from his body.

Sergeant Daniel Orr of the Metropolitan Nashville Police Department Crime Scene Unit described the bullets, spent shell casings, bullet holes, and weapons that he found at the scene of the shooting, including a nine-millimeter semi-automatic handgun that was introduced as Exhibit 6.

Officer Carlos Anderson of the Metro Nashville Police Department testified that he was the first officer to respond to the scene of the shooting. The victim was breathing shallowly when he arrived, and he radioed for an ambulance and attempted CPR. Another officer arrived shortly thereafter, and the two of them secured the scene while waiting for the homicide unit and the ID section of the crime scene unit. On cross-examination, Officer Anderson testified that the victim's brother, Chris Crockett, told him at the scene that three people had invaded the home that night.

Dr. Bruce Levy, the medical examiner for Davidson County, testified that the victim died from "a single gunshot wound to the right upper-side of his chest," with the bullet striking "his right lung, his heart, his left lung, his liver, and his stomach."

Special Agent Steve Scott of the Tennessee Bureau of Investigation, an expert in firearms identification, testified that the bullet removed from the victim's body had been fired from the nine-millimeter semi-automatic handgun, previously identified as Exhibit 6.

The State's final witness was Homicide Detective Robert Anderson of the Metropolitan Nashville Police Department who testified that, during the course of his investigation, he learned that a man named Phillip Lillard had been admitted to the emergency room at a local hospital for treatment of a gunshot wound, and he went to interview him there. He said that Lillard admitted that he had gone to the Mill Station home where he had been shot. Lillard also told him that the defendant had accompanied him to the house.

Detective Anderson testified that the defendant surrendered himself to the police after a warrant had been issued for his arrest. He identified a video recording of his interview with the defendant, which was introduced into evidence. During the interview, the defendant initially claimed that he and three others, including the two men who entered Crockett's residence, had driven there to buy marijuana. He later admitted, however, that he knew that the men intended to rob Crockett and that he had directed them to Crockett's home and allowed them to use his car. The defendant further admitted that he had not wanted to enter the house because he knew that Crockett could identify him. The defendant said that, after the shooting, he threw one of the other men's guns in a dumpster. Throughout the interview, the defendant insisted that he neither needed money nor expected to profit from the robbery.

The defendant elected not to testify and presented no evidence in his defense.

## ANALYSIS

### Sufficiency of the Evidence

-3-

The defendant contends that the evidence was insufficient to sustain his conviction, arguing that his statements in the interview with Detective Anderson, standing alone, cannot establish his involvement in the robbery beyond a reasonable doubt. The State responds by arguing that the defendant's confession detailing his involvement in the crime, combined with other evidence showing that the victim was killed during the perpetration of a home invasion robbery, was sufficient for the jury to find the defendant guilty of first degree felony murder. We agree with the State.

When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

First degree felony murder is defined as "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery." Tenn. Code Ann. § 39-13-202(a)(2) (2003 & 2010). No culpable mental state is required for a conviction for felony murder except the intent to commit the underlying felony. Id. § 39-13-202(b).

-4-

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Id. § 39-13-401(a).

The defendant, while essentially conceding that the State established that the victim was killed during the perpetration of or attempt to perpetrate a robbery, argues that the State failed to prove beyond a reasonable doubt that he had any intent to participate in the underlying felony. We respectfully disagree. Proof of the intent to commit the underlying felony is a question of fact to be decided by the jury after consideration of all the facts and circumstances of the case. State v. Buggs, 995 S.W.2d 102, 107 (Tenn. 1999). The State presented evidence to show that the defendant informed his companions of the large amount of money Crockett kept in his home, directed and accompanied the men in his vehicle to the residence with the knowledge that they intended to rob Crockett of the cash, waited in the vehicle while two of the men entered the home armed with weapons, and disposed of one of the weapons after the robbery. This evidence was sufficient for a rational jury to find beyond a reasonable doubt that the defendant, despite his claim to police, had the intent to participate in the robbery.

The defendant also argues that Crockett was not credible because he gave conflicting accounts to police of the number of men who entered the home. We do not find it surprising, however, that a victim of a traumatic event such as a home invasion, especially one in which shots were exchanged and a family member killed, would be confused about the number of intruders involved. The jury, by its verdict, obviously discounted the defendant's claim of innocence and resolved any discrepancies in the testimony in favor of the State, as was its prerogative as the trier of fact. We conclude, therefore, that the evidence was sufficient to sustain the defendant's conviction for first degree felony murder.

## CONCLUSION

Based on the forgoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-5-